WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Daniel Bozek, et al., | No. CV-24-00210-PHX-SHD |
|---|---|
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Labor Force Incorporated, et al., | |
| Defendants. | |

At issue is Plaintiffs Daniel Bozek and Brandon Gaines's (together, "Plaintiffs") unopposed Motion for Preliminary Approval of Class Action Settlement. (Doc. 38.) On May 5, 2026, I held a hearing on the motion, which seeks preliminary approval of a class settlement reached between Plaintiffs and Defendants Arizona Labor Force, Incorporated and Labor Systems, Inc. (together, "Defendants"). (Doc. 40.) For the reasons stated below, the motion will be **granted**.

## I.    BACKGROUND

Plaintiffs Bozek and Gaines, both former employees of Defendants, bring this class action on behalf of themselves and a proposed class of all United States residents whose personally identifiable information ("PII") may have been compromised in a January 3, 2023 cyberattack on Defendants' computer systems. (*See* Doc. 16 at ¶¶ 1–10, 26–27.) Defendants, who are headquartered in Arizona, operate a staffing agency and, incidental to their business, store the PII of their employees. (*Id.* at ¶¶ 17–18, 22.) Plaintiffs allege that a third-party hacker accessed Defendants' network, copied files containing current and

former employees' names, addresses, Social Security numbers, and W-2 information and posted it on the dark web. (*Id*. at ¶¶ 26–29.) They further allege that Defendants failed to properly secure and safeguard this private information. (*Id*. at ¶ 4.)

Plaintiff Bozek worked for Defendants from August 2019 to August 2020, and Plaintiff Gaines worked for Defendants from 2012 to 2014. (*Id.* at ¶¶ 14–16.) Both Plaintiffs' PII was subject to the alleged security breach and posted on the dark web. (*Id.*)

### A.     Procedural History

Plaintiffs filed this action on January 30, 2024. (Doc. 1.) After Defendants moved to dismiss the Complaint, Plaintiffs filed the operative First Amended Complaint ("FAC") on July 15, 2024. (Docs. 13, 16.) Defendants answered the FAC on August 2, 2024, (Doc. 18), and then moved for judgment on the pleadings, (Doc. 19). On January 22, 2025, the motion for judgment on the pleadings was granted in part. (Doc. 26.) Plaintiffs' Third Cause of Action for breach of implied contract and the Eighth Cause of Action under the California Consumer Privacy Act were allowed to proceed. (*Id*.) The parties exchanged both formal and informal discovery through August 2025, and, on September 10, 2025, they participated in private mediation, where they reached agreement on the material terms of a class-wide settlement. (Doc. 38-2 at ¶ 5.)

### B.     The Settlement Agreement

The proposed Settlement Class consists of the following: "All United States residents whose PII may have been compromised in the Data Incident, excluding Defendants' directors, officers, and agents, their subsidiaries and affiliated companies, governmental entities, and the assigned Judge, that Judge's immediate family, and Court staff."   (Doc. 38-3 at ¶ 55.) The settlement creates a non-reversionary all-cash common fund of $300,000, from which Settlement Class Member benefits, settlement-administration costs, service awards, and any attorneys' fees and costs will be paid, while Defendants separately pay Class Action Fairness Act notice costs up to $2,500. (*Id.* at ¶¶ 61–63, 71.)

Settlement Class Members who submit valid claims may elect a pro rata cash

payment initially set at $25, subject to upward or downward adjustment depending on the number of valid claims and the amount remaining in the Net Settlement Fund after payment of administration costs, service awards, and any fee and cost award. (*Id.* at ¶ 65.) Class Counsel intend to seek service awards of up to $1,500 for each named Plaintiff, and attorneys' fees of up to one third of the Settlement Fund. (Doc. 38-1 at 9–10.)

The parties propose Simpluris, Inc. ("Simpluris") as Settlement Administrator. (Doc. 38-3 at ¶ 67.) Simpluris will disseminate postcard notice by U.S. mail using the class list, update addresses using the National Change of Address database and other tools, maintain a settlement website and toll-free telephone line, accept online and mailed claims, perform reasonable skip-tracing for returned notices, and administer the claims process. (*Id.* at ¶ 69; Doc. 38-1 at 8–9.)

## II.    LEGAL STANDARD

Procedurally, the class certification and settlement approval process proceeds in two steps. At the first step, the court preliminarily determines whether the proposed settlement class should be certified and whether the court "will likely be able to" approve the settlement proposal under the "fair, reasonable, and adequate" standard such that it can direct notice under Rule 23(e)(1) to all class members who would be bound by the settlement. *See* Fed. R. Civ. P. 23(e). At the second step, the court must evaluate whether to grant final approval. The Motion concerns only the first step.

### A.    Standard for Class Certification

Rule 23(a), Federal Rules of Civil Procedure, provides that a class action may proceed only if four prerequisites are met:

1. Numerosity: "the class is so numerous that joinder of all members is impracticable";

2. Commonality: "there are questions of law or fact common to the class";

3. Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

4. Adequacy of Representation: "the representative parties will fairly and

adequately protect the interests of the class."

*Doyle v. Pekin Ins. Co.*, 2025 WL 1192752, at *2 (D. Ariz. 2025) (quoting Fed. R. Civ. P. 23(a)).

Additionally, Rule 23(b)(3) allows a court to certify a class action if it finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In conducting the requisite inquiry, courts consider several "pertinent" factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Supreme Court has explained that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (citation omitted). The district court must engage in a "rigorous analysis" to ensure that the requirements of Rule 23(a) have been satisfied. *Id.* at 350–51.

**B.      Standard for Preliminary Approval of Class Settlement**

Furthermore, Rule 23 requires approval by the district court of any class action settlement. Fed R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily

dismissed, or compromised only with the court's approval."). Approval requires the court to conduct a hearing and find that a settlement is "fair, reasonable, and adequate after considering" several factors. Fed. R. Civ. P. 23(e)(2) (setting forth factors). In the Ninth Circuit, district courts must balance eight factors when evaluating a proposed class settlement under Rule 23(e)(2):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Some of these factors cannot be fully assessed until the final fairness hearing; therefore,

> [a]t the preliminary approval stage, courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval.

*Doyle*, 2025 WL 1192752, at *3 (citing *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)); *see also Saliba v. KS Statebank Corp.*, 2021 WL 2105608, at *4 (D. Ariz. 2021) (preliminary approval is evaluated simply for "whether the Settlement is within the range of reasonableness").

Nonetheless, for settlements reached prior to formal class certification, the Ninth Circuit has recognized that "there is an even greater potential [than normal] for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* "The district court's approval order must show not only that it has explored the *Churchill*

factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *Id.* at 947 (citation modified); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (concerns about the fairness of settlement agreements "warrant special attention when the record suggests that the settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement"). Ultimately, however, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation omitted).

## III.    DISCUSSION

In the unopposed motion, Plaintiffs ask that I (1) preliminarily certify a national class for settlement purposes (the "Settlement Class") and appoint Plaintiffs and their counsel as the Settlement Class's representatives and counsel; (2) preliminarily approve the proposed Settlement Agreement; and (3) approve the notice plan and forms of notice to the Settlement Class. (Doc. 38-1 at 20.)  I first address whether Plaintiffs have met their burden of establishing that the proposed Settlement Class meets the requirements of Rule 23(a) and (b)(3).  I then examine whether the Settlement is fair, reasonable and adequate under Rule 23(e) and the pertinent Churchill factors.  Finally, because I will preliminarily approve the Settlement, I address whether the parties' proposed notice plan is adequate.

### A.    Preliminary Certification of the Settlement Class

The parties agree to the following definition of the Settlement Class: "all United States residents whose PII may have been compromised in the Data Incident," subject to certain exclusions. (Doc. 38-3 at ¶ 55.)  For the reasons below, the parties have established that the Settlement Class meets the requirements of Rule 23(a) and (b)(3).

#### 1.    Rule 23(a)(1)—Numerosity

To satisfy Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015).  The term "impracticable"

has been construed to mean that joining all claimants would be difficult and inconvenient. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Although there is no set numerical threshold, courts presume that joining more than 40 claimants would be impractical. *See, e.g., id.; Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

Defendants estimate that approximately 37,884 individuals are in the Settlement Class. (Doc. 38-2 at ¶ 5.) Numerosity is satisfied.

### 2.    Rule 23(a)(2)—Commonality

Rule 23(a)(2) specifies that a class action present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). There must be a minimum of one common question of law or fact shared by the class to satisfy this provision. *See, e.g., Wal-Mart*, 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2), even a single common question will do." (cleaned up)). Accordingly, Rule 23(a)(2) presents a "'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common…or that the common questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc.*, 2019 WL 2372447, at *2 (N.D. Cal. 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Plaintiffs have demonstrated the existence of questions of law and fact that are common to the proposed Settlement Class, such as whether Defendants adequately secured and safeguarded Settlement Class Members' PII, whether Defendants' alleged failure to do so caused the Data Incident, and whether Defendants are liable to Settlement Class Members for breach of implied contract and other claims arising from the Data Incident. (Doc. 38-1 at 8; Doc. 16 at ¶ 71.) Thus, Plaintiffs have also satisfied the commonality requirement.

### 3.    Rule 23(a)(3)—Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The inquiry focuses

on "whether other members have the same or similar injury as [the class representatives], whether the action is based on conduct which is not unique to the [representatives], and whether other class members have been injured by the same conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quotation marks omitted); *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). The representatives' claims "need not be substantially identical" to other class members' claims to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685 (citation omitted). Thus, if the representatives' and other class members' claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily preclude typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017) (holding that "typicality is not defeated" when a representative plaintiff's "precise injuries are [not] identical" to the class and her "damages differ[ed] from the damages of some class members").

Plaintiffs' claims and the Settlement Class Members' claims are nearly identical. They all arise from the same Data Incident, involve the same alleged failure by Defendants to safeguard PII, and rely on the same legal theories. (Doc. 38-1 at 13–14; Doc. 38-2 at ¶ 26.) The typicality requirement is satisfied here.

### 4.      Rule 23(a)(4)—Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The inquiry under this provision "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As the Supreme Court has explained, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Courts in the Ninth Circuit ask the following questions when determining whether class representatives adequately represent the class: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class

members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). "The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)." *Whitehead v. Amica Mut. Ins. Co.*, 2025 WL 870990, at *8 (D. Ariz. 2025) (citation modified).

Plaintiffs have established that they have no conflicts of interest with other Settlement Class Members. Plaintiffs are members of the proposed Settlement Class and had their PII allegedly compromised in the same Data Incident. (Doc. 38-2 at ¶ 26.) They suffered the same alleged injury as the rest of the Settlement Class Members. (*Id.*) Plaintiffs have actively participated in the prosecution of this action by reviewing and approving the complaint, communicating regularly with counsel, and staying informed about the progress of the litigation. (Doc. 38-2 at ¶ 25.)

Plaintiffs have also demonstrated that their counsel has and will vigorously pursue the interests of the Settlement Class. "Although there are no fixed standards by which vigor can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (cleaned up), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. Plaintiffs have provided information about counsel's experience in similar class actions and their efforts in prosecuting this action, including securing a favorable settlement after extensive negotiations given litigation risks. (*See, e.g.*, Doc. 38-2 at ¶¶ 17–24.) Accordingly, Plaintiffs have established adequacy.

### 5.    Rule 23(b)(3)—Predominance and Superiority

Plaintiffs seek class certification pursuant to Rule 23(b)(3), (Doc. 38-1 at 9), which provides for class treatment when (a) questions of law or fact common to class members predominate over questions affecting individual members, and (b) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

a.    Predominance

Although the predominance requirement is similar to Rule 23(a)(2)'s commonality requirement, it is "even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quotation marks omitted). Thus, "courts have a duty to take a close look at whether common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quotation marks omitted). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation marks omitted).

Here, Plaintiffs have demonstrated that the common issues predominate over the individual issues. All Settlement Class Members' PII was allegedly compromised in the same Data Incident, and their claims arise from the same allegedly inadequate data security practices and depend on largely common evidence about Defendants' conduct. (Doc. 38-1 at 14–15.) Resolving the central liability question can be done on a class-wide basis. (*See id.*) There is minimal likelihood that the Settlement Class Members have strong interests in individually controlling the prosecution of separate actions, and it is unlikely that managing the class action would be difficult. *See* Fed. R. Civ. P. 23(b)(3)(A), (D); *see also In re Hyundai*, 926 F.3d at 556–57 (manageability concerns are absent in the

settlement-class context).

b.    Superiority

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, a class action will undoubtedly promote efficiency. Each Settlement Class Member's claims involve substantially similar issues, and filing tens of thousands of individual cases would increase litigation costs and waste both the parties' and courts' time and resources. Additionally, the damages of individual Settlement Class Members are likely too small to make individual litigation feasible. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 254 (D. Ariz. 2022) ("[B]ecause the recoveries of each individual class member will be relatively small, a class action is superior to other methods of adjudication."). The parties are unaware of any other litigation pending addressing the Data Incident, which further supports the conclusion that a class action is a superior method for resolving the class members' claims. *See* Fed. R. Civ. P. 23 (b)(3)(B), (C). Thus, the superiority requirement is met.

Because Plaintiffs' proposed Settlement Class meets the requirements of Rules 23(a) and (b), the class will be certified for settlement purposes.

**B.    Preliminary Approval of the Settlement**

Based on my review of the Motion, the attached declarations, and the Settlement Agreement (Doc. 38-3), I preliminarily approve the Settlement because I find that I will likely be able to approve it under Rule 23(e)(2)'s "fair, reasonable and adequate" standard after considering the four factors described in *Horton*. 266 F.R.D. at 363.

**1.    Non-collusive Settlement Negotiations**

The means and negotiations by which the parties settled the action must be evaluated under the first factor. *Id.* at 363. Courts bear the obligation to evaluate the scope and effectiveness of the investigation plaintiffs conducted prior to reaching an agreement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also Acosta v.*

- 11 -

*Trans Union*, LLC, 243 F.R.D. 377, 397 (C.D. Cal. 2007) ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement."); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("Where...parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." (quotation marks omitted)).

This case presents no indicia of collusion. The Settlement appears to be the product of serious and informed arm's-length negotiations. After initial motion practice resulting in judgment on the pleadings as to some claims, the parties exchanged formal and informal discovery through August 2025. At the preliminary approval hearing, the parties explained that the bulk of the discovery concerned whether there was a data breach. (Doc. 40.) Defendants hired a forensic vendor to investigate the alleged breach and examined the dark web to locate any information connected to plaintiffs, defendants, and relevant third parties. (*Id.*) The parties then participated in a full-day private mediation before an experienced mediator, Hunter Hughes, Esq., on September 10, 2025. (Doc. 38-1 at 15; Doc. 38-2 at ¶¶ 5–8.) After mediation and continuing discussions, the parties reached agreement on the material terms of settlement. (Doc. 38-2 at ¶ 6.) Those circumstances support the conclusion that the Settlement was not negotiated collusively or in haste. *See In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) ("There appears to be no better evidence of a truly adversarial bargaining process than the presence of a neutral third party mediator." (citation modified)).

### 2.      No Obvious Deficiency

For purposes of determining whether there is an obvious deficiency, the Ninth Circuit has identified three particular warning signs "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations": (1) "When counsel receive a disproportionate distribution of the settlement,"

(2) "clear sailing" provisions requiring payment of attorneys' fees separate from class compensation and where a defendant promises not to challenge agreed-upon fees, and (3) reverter provisions that result in unawarded fees reverting to defendants rather than to the class. *In re Bluetooth*, 654 F.3d at 947; *Briseño v. Henderson*, 998 F.3d 1014, 1026–27 (9th Cir. 2021) (identifying "red flag" of a clear sailing arrangement where the defendant "agreed not to challenge the agreed-upon fees for class counsel," which "signal[ed] the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members").

Here, none of the deficiencies identified in *In re Bluetooth* are present—there is no clear sailing provision, no reverter of unawarded fees to Defendants, and no disproportionate payment of the settlement to counsel. The Settlement provides concrete relief in the form of a $300,000 non-reversionary common fund for the class, from which valid claimants may receive pro rata cash payments initially set at $25, subject to adjustment depending on the claim rate and the net fund available. (Doc. 38-3 at ¶¶ 61, 65.) Defendants also separately bear the cost of CAFA notice up to $2,500. (*Id.* at ¶ 61, 71.) Moreover, any residual funds will be distributed to a non-profit organization, Electronic Frontier Foundation, with the court's approval. (*Id.* at ¶ 98.) On its face, that structure provides tangible class relief rather than illusory benefits, and does not indicate any obvious deficiency.

I will note that the requested attorneys' fees of up to one third of the Settlement Fund warrant careful review at final approval, particularly because they will be paid from the common fund. (Doc. 38-3 at ¶ 96.) I expressed my concerns about the propriety of an attorney fee award amounting to one third of the Settlement Fund at the preliminary approval hearing. Regardless, the one-third number represents the outer limit of what Plaintiffs may request; it does not guarantee they will be awarded that amount. The fee request will be presented before the final approval hearing, and class members will have the opportunity to object to it. On the current record, the possibility of a one-third fee award does not preclude preliminary approval.

### 3. No Preferential Treatment

District courts must be "particularly vigilant" for signs that counsel has allowed the "pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Accordingly, preliminary approval of a class settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Class representatives are, however, "eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). These payments "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). These payments, however, must be evaluated individually to avoid "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion," and this evaluation entails balancing "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton*, 327 F.3d at 975, 977.

The Settlement calls for a minimal incentive fee of $1,500 for each of the two named Plaintiffs. (Doc. 38-3 at ¶ 95.) This amounts to 0.5% of the value of the Settlement per named plaintiff. Plaintiffs actively participated in the prosecution of the case, put their names and reputations on the line, remained informed about the litigation, and did not condition their service on receiving an award. (Doc. 38-1 at 9–10; Doc. 38-3 at ¶ 95.) At this stage, the requested amount is modest relative to the overall fund and does not suggest collusion. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving $45,000 in incentives awards, which made up "a mere .17% of the total settlement fund of $27,250,000").

### 4. Within the Range of Possible Approval

Finally, courts focus on "substantive fairness and adequacy" and "consider

- 14 -

plaintiffs' expected recovery balanced against the value of the settlement offer" when evaluating whether a settlement falls "within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1080. The record does not quantify with precision the maximum trial value of the surviving claims. (*See generally* Doc. 38.) At the preliminary approval hearing, the parties explained that this was, in part, because of the difficulty of proving causation in this case and of proving the class members' damages in data breach cases more generally. (Doc. 40.) Even so, given the continued risks of litigation, the uncertainty of class certification and merits proof in data-breach cases, and the immediate recovery afforded by the Settlement, I am satisfied for preliminary purposes that the Settlement falls within the range of possible approval. The parties, however, should be prepared to present more concrete evidence of the maximum value of the Settlement Class's claims at the fairness hearing to allow for a more complete understanding of the adequacy of the Settlement's value. *See, e.g., Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 124–25 (D. Ariz. 2022) (explaining that courts need more than "vague and conclusory statements" about numerical evidence to determine whether a proposed settlement's value is adequate).

On balance, I find that the Settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. Preliminary approval is therefore warranted.

## C.    Proposed Notice and Claims Process

The parties have proposed a form of class notice, as well as a program for giving that notice, to the members of the Settlement Class. Rule 23(c)(2)(B) sets forth the requirements for notice to a class certified under Rule 23(b)(3):

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . .. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

In addition to outlining the contents of the notice, Rule 23 requires that the notice be provided via "United States mail, electronic means, or other appropriate means." *Id.* Additionally, the Supreme Court has explained that due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the Settlement includes a proposed Postcard Notice and Long Form Notice (Docs. 38-4, 38-5), Claim Form (Doc. 38-6), and a Notice Program. (*See* Doc. 38-3 at ¶¶ 70–79.) Both notice forms are drafted in plain English and contain the key information required by Rule 23(c)(2)(B), including a description of the material terms of the Settlement, the deadlines and procedures for submitting a claim, opting out, or objecting, and the date of the Final Approval Hearing. (Docs. 38-4, 38-5, 38-6.) The Notice Program requires direct notice by U.S. Mail to all Settlement Class Members using the addresses on the Class List, which Defendants will provide to the Settlement Administrator within 5 days of preliminary approval. (Doc. 38-3 at ¶¶ 70, 72.) Addresses will be updated using the USPS National Change of Address database and processed through CASS and LACS prior to mailing. (Doc. 38-1 at 9.) The Notice Program is supplemented by a Settlement Website (where Settlement Class Members may obtain notice documents and submit Claim Forms electronically) and a toll-free telephone number maintained by the Settlement Administrator. (Doc. 38-3 at ¶¶ 59, 69, 74.) The Settlement Administrator will also perform reasonable address traces and re-mail Postcard Notices returned as undeliverable.

(*Id.* at ¶ 78.)

Accordingly, the Notice Program complies with Rule 23(c)(2)(B). *See, e.g., Dale v. Travelers Property Casualty Ins. Co.*, 2024 WL 4503808, at *10 (D. Ariz. 2024) (finding notice was appropriate where it was served "by United States Mail," and was "in the form of easily understandable questions and answers"). Furthermore, both the form of notice and the Notice Program comport with due process because they are reasonably calculated to apprise Settlement Class Members of the pendency of this lawsuit and afford them the opportunity to object. *See Mullane*, 339 U.S. at 314. Thus, the proposed notice forms and Notice Program will be approved.

## IV.     CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Motion for Preliminary Approval is **GRANTED**. I preliminarily approve the Settlement.

2. I hereby certify, for settlement purposes only, a Settlement Class consisting of all United States residents whose PII may have been compromised in the Data Incident. "Data Incident" refers to when an unknown third-party hacker accessed Defendants' network and information technology systems on or about January 3, 2023. Excluded from the Settlement Class are: (i) all persons who are directors, officers, and agents of Defendants, or their respective subsidiaries and affiliated companies; (ii) governmental entities; and (iii) the Judge assigned to the Action, that Judge's immediate family, and Court staff.

3. <u>Settlement Class Representatives</u>. For purposes of the Settlement only, I preliminarily find and determine, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that Plaintiffs Daniel Bozek and Brandon Gaines will fairly and adequately represent the interests of the Settlement Class in enforcing their rights in the action and appoints them as Settlement Class Representatives. I preliminarily find that they are similarly situated to absent Settlement Class Members and therefore typical of the Settlement Class, and

that they will be adequate Settlement Class Representatives.

4.    Class Counsel.  For purposes of the Settlement, I appoint Ben Travis of Ben Travis Law, APC and Joshua Swigart of Swigart Law Group, APC, and Bryan Hodyno of Compassionate Counsel as Class Counsel to act on behalf of the Settlement Class and the Settlement Class Representatives with respect to the Settlement.  I authorize Settlement Class Counsel to enter into the Settlement on behalf of the Settlement Class Representatives and Settlement Class, and to bind them all to the duties and obligations contained therein, subject to final approval of the Settlement.

5.    Administration.  Simpluris, Inc. is appointed as Settlement Administrator to administer the notice procedure and the processing of claims for the Settlement Class.    The Settlement Administrator is directed to perform all tasks the Settlement Agreement requires.  The Settlement Administrator's fees will be paid out of the Settlement Fund pursuant to the terms of the Settlement Agreement.

6.    Class Notice.  The form and content of the proposed Long Form Notice, Postcard Notice and Claim Form attached to the Settlement Agreement are hereby approved.  The Parties and Settlement Administrator may amend the notice documents as necessary to add dates, correct errors, and improve the information provided to Settlement Class Members.

7.    The Settlement Administrator shall send the applicable notice as provided by the Settlement Agreement.

8.    The Settlement Administrator shall treat the records of Settlement Class Members as confidential and shall not disclose all or any portion of those records to any person or entity except as authorized by Court order.    The Settlement Administrator shall use the records containing Settlement Class Member information solely for the purposes of providing notice, verifying claim forms, and calculating and paying Settlement benefits.

9. <u>Settlement Website</u>. No later than one day before the commencement of the Notice Program, the Settlement Administrator shall maintain and administer a dedicated Settlement Website containing information and related documents about the Settlement. At a minimum, such documents shall include the Settlement Agreement and attached exhibits, Long Form Notice, Postcard Notice, Claim Form, this Preliminary Approval Order, all submissions regarding preliminary and final Settlement approval, any motion(s) for attorney's fees, costs, and/or service awards for the Settlement Class Representatives, the operative Complaint and the Final Approval Order. The Settlement Website shall remain online and operable for at least six months after Final Approval.

10. <u>Claims.</u> All claims must be postmarked or submitted electronically no later than **fifteen (15) days before the initial scheduled Final Approval Hearing** as specified by the Settlement. Any Settlement Class Member who does not timely and properly submit a claim within the time provided for shall be forever barred from sharing in the distribution of the proceeds of the Settlement, unless otherwise agreed by the Parties or ordered by me, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained therein, this Order, the Final Judgment, and the Final Approval Order.

11. The Settlement Administrator shall review and process each claim to determine whether it qualifies for Settlement benefits, and in what amount(s), in accordance with the terms of the Settlement. Claims that do not meet the submission requirements may be rejected. Prior to rejecting a claim, in whole or in part, the Settlement Administrator shall communicate with the claimant using the contact information provided on the Claim Form to give the claimant a reasonable opportunity to remedy any deficiencies in the claim.

12. <u>Exclusions from the Settlement</u>. Members of the Settlement Class who wish to exclude themselves from the Settlement Class must advise the Settlement

Administrator by providing a written Request for Exclusion. The Request for Exclusion must be submitted electronically or postmarked no later than **thirty (30) days before the initially scheduled Final Approval Hearing** (the "Opt-Out Deadline"). In it, the Settlement Class member must state the name of the proceeding, the individual's full name, address, email address (if any), personal signature, and include a statement indicating a request to opt-out of the Settlement Class. Any member of the Settlement Class who submits a valid and timely Request for Exclusion will not be bound by the terms of the Settlement. All members of the Settlement Class who do not submit a timely, valid Request for Exclusion, however, will be bound by the Agreement and the Judgment, including the releases and covenant not to sue.

13. <u>Objections</u>. Any Settlement Class Member who intends to object to the Settlement must file a written or electronic Objection with the Settlement Administrator, no later **thirty (30) days before the initially scheduled Final Approval Hearing** (the "Objection Deadline"). In the written Objection, the Settlement Class Member must include (1) the objector's full name, mailing address, telephone number, and email address (if any); (2) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (3) the number of times the objector has objected to a class action settlement within the 5 (five) years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (4) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (5) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action

settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case; (6) the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing; (7) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (8) statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and, (9) the objector's signature (an attorney's signature is not sufficient). The Parties shall have the right to conduct limited discovery of any objector relevant to the Objection. Any Settlement Class Member who has timely filed an Objection and indicated an intent to appear may appear at the Final Approval Hearing, either in person or through an attorney hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of the Settlement.

14. <u>Motion for Final Approval.</u>  The motion for final approval shall be filed and served **at least forty-five (45) days before the Final Approval Hearing**.

15. The motion for attorneys' fees and costs and Service Awards shall be filed **at least forty-five (45) days before the Final Approval Hearing**.

16. Any replies to any Objections shall be filed and served at least **fourteen (14) calendar days prior to the Final Approval Hearing**.

17. Defendants shall bear no responsibility for any application for attorneys' fees and costs and service awards, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  At or after the Final Approval Hearing, I shall determine whether any application for attorneys' fees and costs to Class Counsel and any service awards to the Court-appointed Settlement Class Representatives shall be approved.

18. All reasonable expenses incurred in identifying and notifying Settlement Class Members, as well as administering the Settlement, shall be paid in accordance with the terms set forth in the Settlement.

19. I will hold a Final Approval Hearing on **Tuesday January 12, 2027 at 10:00 am** in Courtroom 502 of the courthouse located at 401 W. Washington Street, Phoenix, Arizona, 85003, to determine: (a) whether the Settlement on the terms and conditions provided for therein is fair, reasonable and adequate and should be finally approved by me; (b) whether a judgment should be entered; (c) whether Settlement Class Counsel should be awarded attorneys' fees and costs, and if so, in what amount; and (d) whether service awards should be awarded to the court-appointed Settlement Class Representatives, and if so, in what amount. I may postpone the Final Approval Hearing and will provide notice of any such postponement on the Settlement Administrator's website without further notice to Settlement Class Members.

20. Neither the Settlement or any of its terms or provisions, nor any of the negotiations or proceedings connected with the Settlement, whether or not consummated, shall be construed as an admission or concession of any kind by any of the Parties. Neither the Settlement nor any of its terms or provisions, nor any of the negotiations or proceedings connected with the Settlement, may be offered against any of the Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of the Parties regarding any issue whatsoever including: (i) whether it was appropriate for class certification; (ii) the validity of any allegation or claim that was, could have been or will be asserted against any of the Defendants; (iii) liability, negligence, fault, or wrongdoing of any kind; and (iv) the existence or scope of any damages.

21. I retain exclusive and continuing jurisdiction over the Parties and the Settlement Class Members to consider all further motions and applications arising out of,

or connected with, the Settlement. I may approve the Settlement with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Class. I shall also retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all Parties hereto submit to the jurisdiction of the court for purposes of implementing and enforcing the Settlement.

22. All Settlement Class Members shall be bound by all determinations and judgments by the court in the Action concerning the Settlement and related matters, whether favorable or unfavorable to the Settlement Class.

23. Stay of Proceedings: All proceedings in this action shall be stayed until further order of the court, except for proceedings that may be necessary to implement this Preliminary Approval Order, the Settlement, its Exhibits, or to comply with or effectuate the terms and conditions of the Settlement.

24. Pending final determination of whether the proposed Settlement should be approved, neither Plaintiffs nor any Settlement Class Member, directly or indirectly, representatively, or in any other capacity, shall commence or prosecute against any of the Defendants, any action or proceeding in any court or tribunal asserting any of the Released Claims.

25. Within 10 days of the date of this Order, Defendants shall deposit the costs of administration. The remainder of the funds shall be deposited within 15 days of final approval.

**IT IS SO ORDERED.**

Dated this 4th day of August, 2026.

_____
Honorable Sharad H. Desai
United States District Judge